JOYNES, J.
Rewis B. Callis died in the latter part of 1840, leaving one child, Ann B., who subsequently intermarried with the appellee William E- Gaines, and a 'widow who was enciente of another'child, who was afterwards born, and is the appellee Elizabeth R. Callis. The widow intermarried in 1842 with William Rayfield; and by a marriage contract, among other provisions which need not be specified, the property which Mrs. Callis took by the will of her first husband was conveyed to a trustee for the benefit of Rayfield, the second husband, during her life.
After the death of Mrs. Gaines, the ap-pellee-William E. Gaines, in his own right and'as administrator of his deceased wife, and Amanda Gaines, their daughter, filed their bill in this cause, insisting that, upon the true construction of the will of Rewis B. Callis, his property became, upon the second marriage of the widow, liable to division among her and the children of Callis. The court below sustained this view, reciting, as the-ground of its opinion, that the last clause of the will so far revoked the preceding clauses that, upon the second marriage of Mrs. *Callis, the property became divisible into' three equal parts: one to be held absolutely by each child, and the other to be held by the widow and her second husband during her life.
I am of opinion that the court erred in this construction.
The first clause of the will gives to the widow, in clear and unequivocal terms, a life estate in the entire property of the testator, real and personal. The only clause which (leaving out of view for the present the last clause) qualifies this provision in any respect, is that which directs the widow, who was also the executrix, in case there should be “a surplus money,” to put it out on interest for the purpose of supporting and schooling tile children. But this clause, whatever its meaning was, applied only to the “surplus money,” if there should be any, and did not qualify or impair the rights of the widow as tenant for life of the residue of the property. There was no “surplus money,” and this clause may be laid out of view.
The clause upon which the decree rests is in the following words: 1 ‘It is my desire that my wife, should never marry without entering into a marriage contract to secure the property for the benefit of her and my children or child, as the case may be.”
The construction placed upon this clause by the court below gives it the effect of controlling the express provisions of previous clauses, in two important particulars: 1. It reduces the estate for life in the whole property, expressly given to the widow by a previous clause, to an estate during widowhood in two-thirds, and an estate for life in only one-third. 2. It converts the estate in remainder, after the death of the wife, in -the whole property, which is expressly given to the children by a previous clause, into an estate which, as to two-thirds of the property, is to take effect upon her marriage.
*'There is certainly nothing in the language of this clause which requires such a construction. Indeed, the language will not admit of it without a departure from its plain and ordinary sense. All that can be said is that the intention imputed to the testator in the event of the second marriage of his wife, may be inferred by argument from this and other parts of the will. But, if entertained, it was not expressed; and it can only be established by overthrowing other purposes distinctly and expressly declared. Clear and unambiguous provisions expressly made cannot be controlled by mere inference and argument from general or ambiguous provisions in other parts of the will. Blake v. Bunbury, 1 Ves., Jr., R. 194, note 4, and cases cited.
The manifest intent of the testator seems to have been that, in the event of the marriage of his wife, the property left by him should, by a marriage contract giving her a separate estate, be protected against her second husband, into whose hands it would otherwise pass by reason of her life estate. The property would thereby be secured for the testator’s wife and children, according to their respective interests therein, as *241 provided by his will. The language of this clause does not import the bestowal of new interests upon the wife or children, but has reference to interests already bestowed, and which were to be “secured” to them in the event of the second marriage of the wife. This construction is consistent with every other part of the will, accords with the language of the clause under consideration, and satisfies every word of it.
It is not difficult to surmise the views which influenced the testator in making this provision. He had left the support and education of his children to be provided for by his wife, to whom he gave his whole estate for life. The second husband, who upon his marriage would ^become entitled to the whole income, might neglect these provisions, while a separate estate, secured to the wife by marriage contract, would give her the same power of providing for the children as before the marriage. The testator probably desired the property to be secured to the children because, though the second husband would have no legal power to affect their interests by any act of his, he might eloign or waste the property to their prejudice.
- I am of opinion that the decree should be reversed, with costs, and a decree entered dismissing the bill, but without costs ; and without prejudice to any suit which the appellees may be advised to bring for the purpose of ascertaining the property in which they are interested, under the will of Ivewis B. Callis deceased, or of protecting their interests therein.
MONCURE, J., concurred in the opinion of Joynes, J.
Decree reversed.